## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | : Chapter 11 |
| | : Case No. 10-12376 (CSS) |
| Robino-Bay Court Plaza, LLC, *et al*.[1] | : Jointly Administered |
| | : |
| Debtors. | : **Hearing Date: To Be Determined.** |
| | : **Objection Deadline: To Be Determined.** |

### DEBTORS' MOTION FOR ENTRY OF INTERIM AND FINAL ORDERS PURSUANT TO 11 U.S.C. §§ 105, 361, 362, AND 363 AND FEDERAL RULES OF BANKRUPTCY PROCEDURE 4001 AND 6004 (I) AUTHORIZING THE DEBTORS TO USE CASH COLLATERAL, (II) GRANTING ADEQUATE PROTECTION, AND (III) SCHEDULING A FINAL HEARING

The above-captioned debtors and debtors-in-possession (the "Debtors") move for the entry of interim and final orders pursuant to sections 105, 361, 362, and 363 of title 11 of the United States Code (the "Bankruptcy Code"), Rule 4001 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") and Rule 4001-2 of the Local Rules of this Court (the "Local Rules") authorizing the Debtors to use cash collateral ("Cash Collateral"), granting adequate protection, and scheduling a further and final hearing on the Motion. In support of the Motion, the Debtors respectfully state as follows:

### Jurisdiction and Venue

1.  The Court has jurisdiction over this Motion pursuant to 28 U.S.C. §§ 157 and 1334. This matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A), (M) and (O).

2.  Venue of this proceeding and this Motion is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409.

3.  The statutory predicates for the relief sought herein are sections 105, 361, 362 and 363 of the Bankruptcy Code, Bankruptcy Rule 4001, and Local Rule 4001-2.

---

[1] The Debtors are Robino-Bay Court Plaza, LLC, tax identification number **-***5820 (Case No. 10-12376 (CSS)) (the "Plaza Debtor") and Robino-Bay Court Pad, LLC, tax identification number **-***1091 (Case No. 10-12377 (CSS)) (the "Pad Debtor").

## Background

4. On July 28, 2010, (the "Petition Date"), the Debtors commenced this case by filing voluntary petitions for relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code"). The cases were subsequently jointly administered.

5. To date, no creditors' committee has been appointed in this case by the Office of the United States Trustee. The Debtors are continuing in possession of their assets and are operating their business as debtors in possession pursuant to sections 1107 and 1108 of the Bankruptcy Code.

6. The Plaza Debtor owns a shopping center located at 650 S. Bay Road, Dover, Delaware 19901 (the "Property") with tenants as reflected on the rent roll attached hereto as Exhibit "A" and incorporated by reference herein. The Plaza Debtor provides services to the tenants in exchange for rent. The Pad Debtor has no operations.

7. On or about November 10, 2006, the Plaza Debtor entered into that certain loan agreement with Barclays Capital Real Estate, Inc. ("Barclays") as evidenced by that certain note dated November 10, 2006 in the original principal amount of $8,700,000.00 executed and delivered to Barclays by the Plaza Debtor (the "Loan"). The Loan was secured by that certain security agreement made and executed by and between the Plaza Debtor and Barclays on November 10, 2006. Pursuant to the security agreement, Barclays was granted a security interest in substantially all of the Plaza Debtor's assets (including rents and cash) (the "Collateral").

8. At the current time, Barclays is owed approximately $10,036,301.37 on account of the Loan plus accrued interest thereon and other related charges, costs and/or fees.

9. The Debtors, pre-petition, had requested a restructuring of the Loan from Barclays in order to pay its vendors. The Debtors were unable to obtain that concession.

10. In anticipation of a disagreement regarding continued use of cash collateral, the Debtors have prepared a budget (the "Budget," a copy of which is attached hereto as Exhibit "B") which shows that through the use of rents, the Debtors can fund all of their operations. The Debtors aver that, by these continued operations, the Debtors have a better likelihood of paying Barclays in full and have the potential to provide a distribution to unsecured creditors.

11. The Debtors anticipate selling the Property and are in the process of seeking authority to employ a broker.

12. The continued use of cash collateral will allow the Debtors to continue operations, maintain the Property and provide payment to Barclays and pay all post-petition obligations.

13. The Budget commences the month of August with actual revenue received. The Budget details all operations in each month.

14. The Debtors aver that they will be able to fund a plan to pay some distribution to pre-petition unsecured creditors by operating its business in this manner.

15. In order to maintain the Debtors' operations, the Debtors require the use of cash collateral for the payment of expenses as more specifically set forth in the Budget. Through the payment of the above-referenced expenses, the Debtors will be able, not only to maintain the status quo, but also to facilitate their reorganization and enhance the collateral.

**Relief Requested**

16. By and through this Motion, the Debtors seek the entry of interim and final orders pursuant to sections 105, 361, 362, and 363 of the Bankruptcy Code, and Bankruptcy Rule 4001:

(a) granting and authorizing the Debtors to use cash collateral on an interim basis in accordance with the budget (the "Budget") attached hereto as Exhibit "B," and pursuant to the terms and conditions contained and described in the proposed Interim Order, a copy of which is attached hereto as Exhibit "C".

(b) approving the form and manner of service of notice of this Motion;

(c) scheduling a final hearing to consider entry of a Final Order granting and authorizing the Debtors to use cash collateral in accordance with and for the time period set forth in the Budget (the "Final Hearing"); and

(d) approving the form and manner of notice of the Final Hearing.

## Basis for Relief Requested

17. Section 363 of the Bankruptcy Code governs a debtor's use of cash collateral and provides in pertinent part:

> (a) In this section, "cash collateral" means cash, negotiable instruments, documents of title, securities, deposit accounts, or other cash equivalents whenever acquired in which the estate and an entity other than the estate have an interest and includes the proceeds, products, offspring, rents, or profits of property and the fees, charges, accounts or other payments for the use or occupancy of rooms and other public facilities in hotels, motels, or other lodging properties subject to a security interest as provided in section 552(b) of this title, whether existing before or after the commencement of a case under this title.
>
> * * *
>
> (b) (2) The trustee may not use, sell, or lease cash collateral under paragraph (1) of this subsection unless—
>     (A) each entity that has an interest in such cash collateral consents; or
>     (B) the court, after notice and a hearing, authorizes such use, sale or lease in accordance with the provisions of this section
>   (3) Any hearing under paragraph (2)(B) of this subsection may be a preliminary hearing or may be consolidated with a hearing under subsection (e) of this section, but shall be scheduled in accordance with the needs of the debtor. If the hearing under paragraph (2)(B) of this subsection is a preliminary hearing, the court may authorize such use, sale, or lease only if there is a reasonable likelihood that the trustee will prevail at the final hearing under subsection (e) of this section. The Court shall act promptly on any request for authorization under paragraph (2)(B) of this subsection.

*See* 11 U.S.C. § 363(a) and (b).

18. Bankruptcy Rule 4001(b) provides that a final hearing on a motion to use cash collateral may not be commenced earlier than 15 days after service of such a motion. Bankruptcy Rule 4001(b) also provides the bankruptcy court, upon request, with the authority to conduct a preliminary hearing on the motion and authorize the restricted use of cash collateral to the extent necessary to avoid immediate and irreparable damage to the debtors.

19. Approval of the Debtors' authority to use Cash Collateral on a 30-day interim basis pending the Final Hearing is necessary to provide the Debtors immediate use of funds, which will allow the Debtors to pay essential operations and administrative costs. The Debtors' immediate cash needs, for which they seek authorization, arise by virtue of its need to pay post-petition obligations critical to the continued operations of its business, such as utility, maintenance, insurance and, and other similar vital expenses to maintain operations.

20. The Budget provides for payments of necessary expenses and capital expenditures. The Budget does not contemplate any additional borrowings to meet its 30-day interim Cash Collateral request, and the amounts set forth in the Budget are reasonably anticipated to be sufficient to cover all anticipated administrative expenses that may accrue during the Interim Cash Collateral Period (as defined below).

21. The Debtors do not have sufficient unencumbered cash or other assets with which to continue to operate their business in chapter 11. The Debtors require immediate authority to use Cash Collateral to continue their business operations without interruption toward the objective of formulating an effective plan of reorganization. The Debtors' interim use of Cash Collateral, to the extent and on the terms and conditions set forth herein, is necessary to avoid immediate and irreparable harm to the estates pending a final hearing. The amount of Cash Collateral authorized to be used pending a final hearing or entry of a final order will not exceed

by more than ten percent (10%) each line item set forth in the Budget (the "Interim Cash Collateral Amount"), for the time period from the Petition Date through October 31, 2010 (the "Interim Cash Collateral Period").

22. The Debtors may expend amounts up to a variance of ten percent (10%) as to any line item of the Budget, provided the aggregate expenditures do not exceed one hundred ten percent (110%) of the aggregate budgeted expenditures for any calendar month. To the extent that the Debtors do not expend the entire amount set forth in the Cash Collateral Budget for any particular line item expense during any particular time period in the Budget, the unused funds may be used by the Debtors to satisfy any "shortfall" in any line item in the Budget for any time period, provided the aggregate expenditures do not exceed one hundred ten percent (110%) of the aggregate budgeted expenditures for the entire period of time during which the Debtors are authorized to use Cash Collateral.

23. Absent the authority to use Cash Collateral, the Debtors will be unable to pay for the services that are essential to the maintenance of their operations and the preservation of the going-concern value of their businesses. In contrast, the authority to use cash collateral will provide the Debtors with liquidity to manage their businesses while the Debtors attempt to reorganize. Accordingly, the use of cash collateral is crucial, and the Debtors request the authority to use cash collateral in accordance with the terms of the Interim Order.

24. Under section 363(c)(2) of the Bankruptcy Code, "The trustee may not use, sell, or lease cash collateral under paragraph (1) of this subsection unless...(B) the court, after notice and a hearing, authorizes such use, sale, or lease...." The use of a secured creditor's cash collateral is conditioned upon the provision of adequate protection by the Debtors.

25. The purpose of providing adequate protection is to protect the value of the creditor's interest in collateral from diminution during the course of the proceedings while the debtor is using the secured creditor's property. *In re Gallegos Research Group, Corp.*, 193 B.R. 577, 584 (Bankr. D.Col. 1995). *See, also, In re Cann & Saul Steel Co.*, 76 B.R. 479 (Bankr. E.D. Pa. 1987); and *In re Dunes Casino Hotel*, 69 B.R. 784, 793 (Bankr. D.N.J. 1986) ("Adequate Protection is designed to preserve the secured creditor's position at the time of the bankruptcy.") The creditor is only entitled to protection of the value of the collateral supporting its secured claim; it is not entitled to adequate protection for lost opportunity costs. *Id.* at 584-85, *citing, United Savings Ass'n of Texas v. Timbers of Inwood Forest Assoc., Ltd.*, 484 U.S. 365, 365 (1988).

26. Section 361 of the Bankruptcy Code provides three nonexclusive methods of providing adequate protection of an entity's interest in property, specifically, (i) cash payments, (ii) replacement liens, or (iii) other methods that will result in the realization of the indubitable equivalent of an entity's interest in the property. *See*, 11 U.S.C. § 361. This section is written in the disjunctive, and any one form of adequate protection may suffice. *In re Swedeland Dev. Group*, 16 F.3d 552 (3rd Cir. 1994) (definition of adequate protection is not expressly defined by the Bankruptcy Code and is to be determined on a case-by-case basis.) Any one of these forms of adequate protection alone is sufficient to adequately protect a secured creditor's interest.

27. Regardless of the form of adequate protection given, "the entitlement to and measure of adequate protection is always determined by the extent of the anticipated or actual decrease in the value of the secured creditor's collateral during the bankruptcy case." *In re Dunes Casino Hotel*, *supra*, 69 B.R. at 793. Here, it is apparent that Barclays will suffer no such diminution.

28. The Debtors propose that Barclays receive post-petition replacement liens to the same extent, validity, priority, and nature as their pre-petition liens.

29. The Debtors asserts that the request to use cash collateral is proper, reasonable and necessary to continue the Debtors' operations. Approval of the Debtors' request to use cash collateral is in the best interest of the Debtors and creditors of the estates.

## Notice With Respect To Final Order

30. Pursuant to Bankruptcy Rule 4001, the Debtors respectfully request that they be authorized to provide notice of the Final Hearing on this Motion by serving a copy of the Motion (to the extent not previously served), together with the Interim Order, in accordance with the terms thereof.

## Notice

31. The Debtors have provided notice of the Motion to (i) the Office of the United States Trustee, (ii) twenty (20) largest unsecured creditors, (iii) Barclays, and (iv) all other persons and entities that have requested notice pursuant to Bankruptcy Rule 2002.

32. Section 102(1) of the Bankruptcy Code defines "after notice and a hearing" to mean "after such notice as is appropriate in the particular circumstances." The Debtors believe notice of the Motion satisfies this requirement and no further notice is required.

WHEREFORE, the Debtors respectfully request that this Court enter an Order:

(i) granting and approving the Motion;

(ii) granting and authorizing the Debtors to use cash collateral on a thirty (30) day interim basis in accordance with the Budget attached hereto as Exhibit "B", and pursuant to the terms and conditions contained and described in the proposed Interim Order, a copy of which is attached hereto as Exhibit "C".

(iii) approving the form and manner of service of notice of this Motion;

(iv) scheduling a final hearing to consider entry of a Final Order granting and authorizing the Debtors to use cash collateral on permanent basis in accordance with and for the time period set forth in the Budget;

(v) approving the form and manner of notice of the Final Hearing; and

(vi) granting such other relief as the Court deems proper and just.

Dated: October 29, 2010
Wilmington, Delaware

CIARDI CIARDI & ASTIN

/s/ C. D. Neff
Daniel K. Astin (No. 4068)
John D. McLaughlin, Jr. (No. 4123)
Joseph J. McMahon, Jr. (No. 4819)
Shannon D. Leight (No. 4115)
Carl D. Neff (No. 4895)
919 Market Street, Suite 700
Wilmington, DE 19803
Telephone: (302) 658-1100
Facsimile: (302) 658-1300
dastin@ciardilaw.com
jmclaughlin@ciardilaw.com
jmcmahon@ciardilaw.com
sleight@ciardilaw.com
cneff@ciardilaw.com

-and-

Albert A. Ciardi, III, Esquire
Thomas D. Bielli, Esquire
One Commerce Square
2005 Market Street, Suite 1930
Philadelphia, PA 19103
Telephone: (215) 557-3550
Facsimile: (215) 557-3551
aciardi@ciardilaw.com
tbielli@ciardilaw.com

*Counsel to the Debtors*